UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NEREIDA ROSARIO,

                             Plaintiff,

         v.                                                    **DECISION AND ORDER**
                                                               10-CV-571S

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                             Defendant.

         1.      Plaintiff challenges an Administrative Law Judge's ("ALJ") decision, dated
September 3, 2008, wherein the ALJ determined that Plaintiff was not disabled under
sections 216 (i) and 223 (d) of the Social Security Act. Plaintiff alleges that she became
disabled on June 22, 2005. She contends that the determination was not supported by
substantial evidence and the ALJ's errors warrant a new hearing.

         2.      On June 16, 2008, the ALJ held a hearing in San Juan, Puerto Rico, at which
Plaintiff and a vocational expert testified.  After consideration of the evidence, including
hearing testimony and Plaintiff's medical records, the ALJ denied Plaintiff's application for
disability benefits.  On May 14, 2010, the Appeals Council denied Plaintiff's request for
review.  Plaintiff filed the current civil action challenging Defendant's final decision in this
Court on July 12, 2010.

         3.      Defendant filed a Motion for Judgment on the Pleadings pursuant to Rule
12(c) of the Federal Rules of Civil Procedure on February 1, 2011, and Plaintiff responded
with a Cross-Motion for the same relief on May 12, 2011.  This Court finds the matter fully
briefed and oral argument unnecessary.  Judgment on the pleadings is appropriate where

1

material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings.  Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. § § 405(g), 1383(c)(3); Wagner v. Sec'y of  Health  and  Human  Servs.,  906  F.2d  856,  860  (2d  Cir.  1990).    Rather,  the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence  as  a  reasonable  mind  might  accept  as  adequate  to  support  a  conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where  evidence  is  deemed  susceptible  to  more  than  one  rational  interpretation,  the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), cert denied 459 U.S. 1212 (1983).

5.      "To determine on appeal whether the ALJ's findings are supported by substantial  evidence,  a  reviewing  court  considers  the  whole  record,  examining  the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams on Behalf of Williams v. Bowen, 859  F.2d  255,  258  (2d  Cir.  1988).    If  supported  by  substantial  evidence,  the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may  differ  from  the  [Commissioner's]."    Rosado v. Sullivan, 805 F. Supp. 147, 153

2

(S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. § § 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.      This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

8.      Although the claimant has the burden of proof as to the first four steps, the

3

Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.      In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since the onset date of her alleged disability (AR at 17);[1] (2) Plaintiff suffered from "major depression," a severe impairment within the meaning of the Act (AR at 17); (3) Plaintiff's mental impairment did not meet or medically equal the criteria necessary for finding a disabling impairment under the regulations (AR at 18); (4) Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, including the ability to follow simple, although not complex, job instructions and to maintain adequate attention for spans of at least two-hour intervals (AR at 19); (5) Plaintiff is unable to perform her past relevant work as a recycling supervisor due to the complex, stressful and non-routine job instructions, but she was capable of performing unskilled jobs of light and sedentary exertional demands that did not involve more than minimal stress (AR at 21-23).

10.     Plaintiff's first challenge to the ALJ's decision is that the alleged incomplete translation of medical documents in the record before the ALJ prevented a fair hearing and

---

[1]Citations to the administrative record will be designated as "AR" and citations to the supplemental administrative record will, if necessary, be designated as "SAR."

precluded meaningful review.  She specifically highlights the failure of certain English translations to include all of the details found in the original Spanish documents.  Plaintiff does not dispute the accuracy of the original medical documentation written in Spanish, which was before the ALJ.  This Court notes that both Spanish and English are official languages of Puerto Rico, where Plaintiff's hearing was held, See P.R. LAWS ANN. tit. 1, § 59, and as evidenced by the translator's certification on the transcript, Plaintiff's hearing was conducted entirely in Spanish (AR at 24, 27,55).  See also Def's Mem of Law in Opp'n, Ex. A (averment that ALJs in Puerto Rico, including the one that presided over Plaintiff's hearing must be fully bilingual).  Further, even if one or more of the State Agency consultants, on whose opinions the ALJ relied, reviewed English translations of Plaintiff's medical documentation, the ALJ reviewed those opinions against the original medical records in Spanish and found those opinions to be supported by the record (AR at 21; see AR at 220-223 (at least one consulting physician's report was originally produced in Spanish)).  This Court finds that, although the record could have been compiled in a manner that would have allowed easier comparison between the translated and original documents, effective review of Plaintiff's arguments is not precluded here.

11.     Plaintiff further argues that the ALJ erred by not determining that Plaintiff's osteoarthritis and bipolar disorder, in addition to her depression, were also severe impairments.  Initially, with respect to osteoarthritis, this physical impairment was never included as a basis for Plaintiff's disability claim (AR at 86, 89, 108, 200, 204). Further, in addition to having the opportunity to observe her, the ALJ questioned Plaintiff extensively about her movement ability (AR at 33-38, 45).  Plaintiff testified that she could only remain standing or seated for 15 minutes before experiencing pain in her back, and that her ability

to bend forward and grasp objects was limited.  (AR at 33-34).  Her medical records occasionally reference a diagnosis of back pain or osteoarthritis, however, they do not include any objective findings of physical limitation.  (See e.g. AR at 397, 407, 409, 479-480; see AR at 356 (emergency room prescription for Motrin and Advil for pain)).  As such, the ALJ's determination that Plaintiff was able to perform unskilled, less stressful jobs with light and sedentary exertional demands is supported by the record. (AR 23).

Plaintiff's argument that the ALJ failed to consider her bipolar disorder is also without merit.  The ALJ specifically referenced those symptoms which Plaintiff now alleges were overlooked, including complaints of audio-visual hallucinations and memory problems.  (AR at 19; see e.g 463-464 (brief references to bipolar diagnosis)).  Although there is no dispute that Plaintiff suffers from mental health issues, the record supports the conclusion, and indeed Plaintiff concedes, that the related symptoms have been found to be moderate limitations.  (AR at 19-20, 211; Pl's Mem of Law at 19).  Thus, even if the ALJ had specifically found that Plaintiff's bipolar disorder was a severe impairment, her symptoms fall short of the required marked restriction or difficulty required by the regulations.  (AR at 18-20; 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.04 (B)). Further, the ALJ's observations that Plaintiff "remains oriented, logical, coherent, relevant, and cooperative" and that her "thought process and reality contact is conserved" are supported by the record despite her subjective mental health complaints.  (AR 19-20, 211, 219, 229, 358-360).

12.    Plaintiff next challenges the denial of disability benefits by arguing that the ALJ erred in failing to follow the treating physician rule, thereby rendering the resulting residual functional capacity finding unsupported by substantial evidence.  Plaintiff argues

that the ALJ should have ordered a function-by-function assessment from three of Plaintiff's treating physicians rather than relying on the opinions of consultative examiners. Plaintiff is correct that "given the non-adversarial nature of a hearing on disability benefits, the Commissioner of Social Security is required to affirmatively develop the medical record before rendering a final decision, even when the claimant is represented by legal counsel." Rizzo v. Astrue, No. 08-CV-3219, 2009 WL 3297781, *5 -6  (E.D.N.Y. 2009), citing Perez v. Chater, 77 F.3d 41, 47 (2d Cir.1996).  Pursuant to the regulations, it is the responsibility of the Commissioner to request a statement from plaintiff's treating source regarding how plaintiff's impairments affect his or her ability to perform work-related activities in the first place.  Johnson v. Astrue, 811 F.Supp.2d 618, 629 (E.D.N.Y. 2011), citing 20 C.F.R. § 404.1512(d). The affirmative duty of an ALJ to *further* develop the record by obtaining a treating physician's missing medical opinion, however, is not triggered unless there are inconsistencies in or an inadequacy of the record. 20 CFR § 404.1527 (c)(2), (3); see Rosa, 168 F.3d at 79 n. 5. If, however, "all of the evidence [the ALJ] receive[s], including all medical opinion(s), is consistent, and there is sufficient evidence for [the ALJ] to decide whether [a claimant is] disabled, [the ALJ] will make [his or her] determination or decision based on that evidence." 20 CFR § 404.1527 (c)(1).

Here, Plaintiff initially indicated that she was being treated at three separate facilities.  (AR at 160-161).  The administrative record reflects that requests for medical records were sent to these hospital systems with the specific instruction that a description be given "of the ability to do work related activities." (AR at 250-251).  The initial request having been made, the question remains whether the ALJ was required to further develop the record.  Here, the ALJ's observations and determinations were consistent with not only

7

the consulting physicians, but also Plaintiff's medical records from treating institutions.

There was therefore no need for the ALJ to recontact Plaintiff's treating sources. See 20

CFR § 404.1512 (e).

13.    Plaintiff's next challenge to the denial of disability benefits is that the ALJ

failed to apply the appropriate legal standards in assessing Plaintiff's credibility.    Initially,

it is the function of the ALJ, not this Court, to resolve evidentiary conflicts and evaluate the

credibility of witnesses, including Plaintiff. Aponte v. Secretary, Dep't of Health and Suman

Servs. of U.S., 728 F.2d 588, 591 (2d Cir. 1984).   Plaintiff argues that the ALJ failed to

discuss all of the required factors set forth in 20 C.F.R. § 404.1529 (c)(3).   Notably,

however, that subsection speaks to the types of evidence that may be considered if

submitted by the claimant.    § 404.1529 (c)(3)("we will carefully consider any other

information *you may submit*").   Further, the ALJ explained that, although Plaintiff's

medically determined impairment could reasonably be expected to produce the alleged

symptoms, Plaintiff's statements regarding the intensity, persistence and limiting effects

of those symptoms were inconsistent with the medical evidence, and therefore not credible.

(AR at 20-21).  The ALJ found that the "medical evidence is essentially unremarkable,"

aside from establishing that Plaintiff was undergoing psychiatric treatment and responding

to medication.  (AR at 21).  The ALJ further found that Plaintiff "remain[ed] a logical,

coherent, relevant and oriented person" with an adequate memory, factors that the ALJ

could observe first hand during the hearing. (AR at 21). Indeed, the ALJ specifically noted

that Plaintiff's adequate memory was evidenced by the fact "that she has been the

informant[] throughout the entire record and at the hearing proceedings." (AR at 21).  The

ALJ's conclusion was also based upon Plaintiff's answers to the ALJ's questions regarding

"details of her treatment, her family situations, and her activities of daily living," and his finding that Plaintiff's "daily activities are varied, and she cares for her own needs." (AR at 21).  The discussion of credibility in the decision is therefore sufficient for this Court to determine the basis for the ALJ's credibility determination.  Cf. Aponte, 728 F.2d at 592.

14.    Plaintiff's last contention that the testimony of the vocational expert cannot provide substantial evidence to support the decision is based upon this Court agreeing with Plaintiff's initial arguments.  Inasmuch as this Court has concluded that those arguments are without merit, this contention must fail as well.

15.    For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings is granted and Plaintiff's Cross-Motion for Judgment on the Pleadings is denied.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 17) is DENIED.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.


Dated: March 25, 2012
       Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                           Chief Judge
                                        United States District Court

9